IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**BARKLEY VENTURES, INC., and
CENTRAL BARK DOG DAY CARE AND
TRAINING CENTER, INC.,**

        Plaintiffs,

v.

**CANINE INVESTMENTS, INC.,
MARK AFANEH, and KAROL AFANEH**

        Defendants.

Case No.: 13-cv-01212

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiffs Barkley Ventures, Inc. ("BVI") and Central Bark Dog Day Care and Training Center, Inc. ("CBDDC"), by their attorneys, for their Complaint against defendants Canine Investments, Inc., Mark Afaneh, and Karol Afaneh state as follows:

### INTRODUCTION

1. This action arises out of the termination of a written franchise agreement between BVI and defendant Canine Investments, Inc. After the franchisee materially defaulted on its obligations under the franchise agreement and failed to cure those defaults, Barkley terminated the franchise agreement. Defendants continue to use plaintiffs' "Central Bark Doggy Day Care" name and marks in operating their business in Muskegon, Wisconsin. BVI seeks a preliminary injunction to enjoin defendants' infringement of its federally-registered name and marks in violation of federal trademark and unfair competition laws, and from continuing to breach their post-termination obligations under the franchise agreement and personal guarantees thereof.

## PARTIES

2. Plaintiff BVI is a Florida corporation having its principal place of business at 836 South 60th Street, West Allis, Wisconsin 53214.

3. Plaintiff CBDDC is a Florida Corporation having its principal place of business at 3699 North Dixie Highway, Oakland Park, Florida 33334.

4. Defendant Canine Investments, LLC ("Canine Investments") is a Wisconsin limited liability company with its principal place of business at S81W18460 Gemini Drive, Muskego, Wisconsin.

5. Defendant Mark Afaneh is a citizen and resident of the State of Wisconsin.

6. Defendant Karol Afaneh is a citizen and resident of the State of Wisconsin.

## JURISDICTION AND VENUE

7. The Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## FACTUAL BACKGROUND

9. BVI is a franchisor offering franchises to qualified persons for the operation of a distinctive system relating to the establishment and operation of day care, boarding, grooming,

training, and specialty retail boutiques for dogs operating under the trade name "Central Bark Doggy Day Care."

10. Central Bark Doggy Day Care centers are operated throughout the United States by BVI and its authorized franchisees who operate their franchised businesses pursuant to written franchise agreements with BVI.

## The Central Bark Doggy Day Care Marks

11. To identify the source, origin, and sponsorship of its products and services, and to distinguish those products and services from those established, made, offered, and sold by others, BVI and its authorized franchisees have extensively used certain trademarks, service marks, trade names, logos, emblems, commercial symbols, and indicia of origin, including but not limited to the "Central Bark Doggy Day Care" mark (the "Central Bark Marks"), in connection with the operation of authorized centers.

12. The Central Bark Marks are owned by CBDDC. CBDDC licenses the Central Bark Marks to BVI. BVI has the full right and authority to use and sublicense the use of the Central Bark Marks to franchisees.

13. Pursuant to franchise agreements entered into by BVI and its authorized franchisees, BVI grants franchises to qualified persons to own and operate Central Bark centers, together with a limited license to use the Central Bark Marks in connection therewith, but only in such manner and at such locations as are expressly authorized by BVI in the franchise agreements.

14. The Central Bark Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registration of the Central Bark Marks continues in full force and effect.

15. CBDDC has given notice to the public of the registration of the Central Bark Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that it and its authorized licensees remain the exclusive users of the Central Bark Marks.

16. BVI and its authorized licensees have continuously used the Central Bark Marks in interstate commerce in connection with the promotion, sale, and franchising of Central Bark Doggy Day Care centers and the promotion and sale of the services they offer throughout the United States, since the date of their registration.

17. BVI and its authorized licensees have extensively advertised and promoted the Central Bark Marks and the products and services they offer in association with those marks throughout the United States and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by BVI and its authorized franchisees under the Central Bark Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

**Defendants' Franchise Agreement**

18. On July 8, 2008, BVI, as franchisor, entered into a written franchise agreement with Canine Investments, as franchisee, pursuant to which BVI granted Canine Investments a limited license to establish and operate a Central Bark Doggy Day Care center in Muskego, Wisconsin (the "Franchise Agreement"). A copy of the Franchise Agreement is attached as Exhibit 1.

19. Mark Afaneh and Karol Afaneh are members of Canine Investments who operated the franchised Central Bark Doggy Day Care in Muskego, Wisconsin.

4

20. On July 8, 2008, defendants Mark Afaneh and Karol Afaneh executed an "Owner's Guarantee and Assumption of Franchisee's Obligations" (the "Guarantee") in connection with the execution of the Franchise Agreement. These defendants personally guaranteed the performance of all of Canine Investments obligations under the Franchise Agreement. A copy of the Guarantee is attached with the Franchise Agreement at Exhibit 1.

21. Canine Investments opened its franchised Central Bark Doggy Day Care center in Muskego, and it has since enjoyed the full and complete benefit of the franchise granted to it under the Franchise Agreement.

22. BVI at all times fully performed all of its obligations under the Franchise Agreement.

## Termination of the Franchise Agreement

23. On July 19, 2013, BVI notified Canine Investments that it was in default of the Franchise Agreement for its failure to operate its Central Bark Doggy Day Care center during normal business hours as required under its Franchise Agreement.

24. The July 19, 2013, notice demanded that Canine Investments cure its defaults within sixty (60) days and informed it that, failing such cure, the Franchise Agreement would terminate for cause effective ninety (90) days from delivery of the notice.

25. Notwithstanding the notice of default and demand for cure, Canine Investments failed to cure its material breaches of the Franchise Agreement.

26. On October 8, 2013, BVI sent a notice confirming that because Canine Investments had failed to cure the default, the Franchise Agreement would terminate for cause effective the ninetieth (90th) day after the delivery of the original default notice—that is, October 17, 2013.

5

27. On October 17, BVI agreed to stay its enforcement of the termination by one additional week, until October 24, 2013, in an attempt to resolve the dispute.

28. The attempts at resolution failed, and BVI is seeking to enforce the October 17, 2013, termination of the Franchise Agreement for cause.

### Defendants' Post-Termination Obligations

29. Each defendant agreed to certain post-termination obligations under the Franchise Agreement and the Guarantee.

30. Canine Investments acknowledged and agreed in the Franchise Agreement that it would receive, and in fact, received BVI's trade secrets and confidential information. Canine Investments and its owners and guarantors, defendants Mark Afaneh and Karol Afaneh, agreed not to disclose any trade secrets or confidential information other than as permitted under the Franchise Agreement.

31. During the course of and within the scope of their relationship with BVI, defendants were entrusted with trade secrets and confidential information of BVI that were not available or accessible to, or known or ascertainable by, competitors of BVI and its authorized franchisees.

32. The trade secrets and confidential information entrusted to defendants afforded the defendants a competitive advantage over their competitors.

33. The trade secrets and confidential information are critical to BVI and its authorized franchisees' ability to maintain their competitive advantage in the highly-competitive pet day care business.

34. BVI would be at a substantial competitive disadvantage if the trade secrets and confidential information known by defendants were to be used by a competitor or by defendants in the operation of a competitive business.

35. In order to induce BVI to grant it a franchise, defendants agreed in the Franchise Agreement that for a two-year period following termination of the Franchise Agreement, it—and its officers, directors, shareholders, members, managers and partners—would not engage in the same or similar business within ten miles of the formerly franchised location. This covenant not to compete protects BVI's brand and goodwill, the Central Bark Marks, and other business interests.

36. Canine Investments also agreed that upon termination of the Franchise Agreement it would, among other things, immediately cease identifying the business as a Central Bark Doggy Day Care center; cease using the Central Bark Marks, trade names, trademarks, and other property; return all operations manuals; and assign to BVI all telephone numbers used in connection with the operation of their former center.

37. The Franchise Agreement provides that if BVI is the prevailing party in any legal proceeding, then BVI shall recover its costs and expenses, including attorneys' fees, incurred in connection with such proceeding.

### Defendants' Failure to Comply With Their Post-Termination Obligations

38. After termination of the Franchise Agreement, defendants failed to comply and continue to fail to comply with their post-termination obligations under their respective agreements.

39. Defendants continue to breach the Franchise Agreement by operating an unauthorized Central Bark Doggy Day Care center at the same location as their formerly

7

franchised location, identifying themselves as a Central Bark franchisee and using the Central Bark Marks, and failing to remove all signs, symbols, trade names, and trademarks.

40. Defendants are breaching their post-termination covenants not to compete under the Franchise Agreement and Guarantee by operating a competitive business at the exact location of their formerly franchised Central Bark Doggy Day Care center. That competing business is offering products and services that are identical to those offered by defendants at their formerly franchised Central Bark Doggy Day Care center.

41. Defendants continue to identify their business as a franchised Central Bark location and offer the same products and services in breach of their post-termination obligations of the Franchise Agreement and Guarantee.

42. Defendants continue to trade off of BVI's goodwill in connection with the operation of their competitive business without BVI's authorization and despite termination of the Franchise Agreement.

43. Defendants continue to hold themselves out as an authorized Central Bark Doggy Day Care when in fact they are not.

44. The telephone number associated with the formerly franchised Central Bark Doggy Day Care center is listed in the telephone book and in online directories as a Central Bark Doggy Day Care center.

45. In breach of their post-termination obligations, Canine Investments has failed to assign to BVI the telephone number associated with their formerly franchised Central Bark Doggy Day Care center. Rather, defendants continue to use that telephone number in connection with their competing business which was published and marketed extensively in association with

8

the Central Bark Marks in both print and online directories. Defendants continue to use this number to improperly compete with BVI and its authorized franchisees.

46. Defendants also continue to use BVI's confidential information in connection with the operation of their competitive business.

47. BVI, both directly and through counsel, has demanded that defendants honor their contractual commitments, but defendants have failed to and refuse to comply with their post-termination obligations under their respective agreements.

### Pending Arbitration Before the American Arbitration Association

48. The Franchise Agreement between BVI and defendants contains an arbitration provision by which the parties agreed to submit claims or disputes except for those involving temporary restraining orders or preliminary injunctive relief to binding arbitration.

49. Nothing in the arbitration provision prohibits either party from seeking a temporary restraining order or preliminary injunctive relief from a court of competent jurisdiction, so long as the party contemporaneously submits the dispute to binding arbitration.

50. On October 29, 2013, BVI and CBDDC filed a demand for arbitration before the American Arbitration Association.

51. Accordingly, in this action before this Court, BVI and CBDDC seek only a preliminary injunction enjoining defendants from infringing the Central Bark Marks and from violating their post-termination obligations, including but not limited to the covenants not to compete.

### COUNT I - TRADEMARK INFRINGEMENT
### Against All Defendants

52. BVI and CBDDC repeat and reallege ¶¶ 1 through 51 of their Complaint as if fully set forth herein.

53. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the Central Bark Marks, and are likely to cause consumer confusion or mistake and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54. As a direct and proximate result of defendants' infringement, BVI and CBDDC have been and will likely be substantially injured in its business, including its business reputation and goodwill associated with the Central Bark Marks, resulting in lost revenues and profits, and diminished goodwill.

55. BVI and CBDDC have no adequate remedy at law because the Central Bark Marks are unique and represent to the public Central Bark's identity, reputation, and goodwill, such that damages alone cannot fully compensate BVI and CBDDC for defendants' misconduct.

56. Unless enjoined by the Court, defendants will continue to use and to infringe the Central Bark Marks to BVI and CBDDC's irreparable injury. This threat of future injury to BVI and CBDDC's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued use of the Central Bark Marks, and to ameliorate and mitigate their injuries.

### COUNT II - UNFAIR COMPETITION
**Against All Defendants**

57. BVI and CBDDC repeat and reallege ¶¶ 1 through 56 of their Complaint as if fully set forth herein.

58. Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the parties' goods,

10

services and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59. Defendants' acts were, and continue to be, knowing and willful.

60. As a direct and proximate result of defendants' unfair competition, BVI and CBDDC have been and will likely be substantially injured in their business, including their goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

61. BVI and CBDDC have no adequate remedy at law because the Central Bark Marks are unique and represent to the public BVI and CBDDC's identity, reputation, and goodwill, such that damages alone cannot fully compensate BVI and CBDDC for defendants' misconduct.

62. Unless enjoined by the Court, defendants will continue to compete unfairly with BVI and CBDDC to their irreparable injury. This threat of future injury to BVI and CBDDC's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition, and to ameliorate and mitigate BVI and CBDDC's injuries.

## COUNT III - BREACH OF CONTRACT – SPECIFIC PERFORMANCE
**Against Defendant Canine Investments**

63. BVI repeats and realleges ¶¶ 1 through 62 of its Complaint as if fully set forth herein.

64. Defendant Canine Investment's failure and refusal to comply with its post-termination obligations under the Franchise Agreement, including the obligations under the covenant not to compete, the obligation to cease identifying the center as a Central Bark Doggy Day Care center, the duty to assign the telephone number associated with the franchised location to BVI, and the obligation to not use and to return BVI's confidential information, constitute material breaches of the Franchise Agreement.

11

65. As a result of defendant Canine Investment's ongoing breaches, BVI has suffered and will continue to suffer actual, substantial, and irreparable harm, including but not limited to loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' franchised Central Bark Doggy Day Care center, lost profits, diminution in the value of its trade secrets and confidential information, and loss of competitive advantage, among other things.

66. Further, BVI has been and will be irreparably harmed by these defendants' actions, and monetary damages are an insufficient remedy in that they cannot fully and adequately compensate BVI for the continuing damage to the value of its goodwill, reputation, customer loyalty, and its inability to refranchise the territory, all of which are caused by defendants' ongoing breaches.

67. Defendant Canine Investments will continue to breach the Franchise Agreement unless its wrongful conduct is enjoined.

68. BVI seeks preliminary injunctive relief requiring Canine Invesment's specific performance of all post-termination obligations under the Franchise Agreement.

### COUNT IV - BREACH OF CONTRACT – SPECIFIC PERFORMANCE
### Against Defendants Mark Afaneh and Karol Afaneh

69. BVI repeats and realleges ¶¶ 1 through 68 of its Complaint as if fully set forth herein.

70. Defendants' failure and refusal to comply with their post-termination obligations under the Franchise, including their obligations under the covenant not to compete and the obligation to not use and to return BVI's confidential information, constitute material breaches of the Guarantee.

12

71. As a result of defendant Mark Afaneh and Karol Afaneh's ongoing breaches of the Guarantee, BVI has suffered and will continue to suffer actual, substantial, and irreparable harm, including but not limited to loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' franchised Central Bark Doggy Day Care center, lost profits, diminution in the value of its trade secrets and confidential information, and loss of competitive advantage, among other things.

72. Further, BVI has been and will be irreparably harmed by defendants' actions, and monetary damages are an insufficient remedy in that they cannot fully and adequately compensate BVI for the continuing damage to the value of its goodwill, reputation, customer loyalty, and its inability to refranchise the territory, all of which are caused by defendants' ongoing breaches.

73. Defendants Mark Afaneh and Karol Afaneh will continue to breach the Guarantee unless their wrongful conduct is enjoined.

## PRAYER FOR RELIEF

**WHEREFORE,** BVI and CBDDC respectfully pray for the following relief against defendants, jointly and severally, as follows:

A. A preliminary injunction enjoining defendants, and each of them, and their respective agents, servants and employees, and those people in active concert or participation with them from:

1. Using the Central Bark Marks, or any trademark, service mark, logo, or trade name that is confusingly similar to the Central Bark Marks;

2. Otherwise infringing the Central Bark Marks or using any similar designation, alone or in combination with any other components;

3. Passing off any products or services as those of Central Bark Doggy Day Care or its authorized franchisees;

4. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services;

5. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with BVI or BVI's franchisees, or with any of their products or services; and

6. Unfairly competing with BVI or BVI's franchisees, in any manner.

B. A preliminary injunction directing defendants, and each of them, and their respective agents, servants and employees, and those people in active concert or participation with them, to fully perform their post-termination obligations, including, without limitation, their obligations under the post-termination covenant not to compete, their obligations to cease using and to immediately return any of BVI's confidential information, and their obligation to assign the telephone number used in the operation of their franchised Central Bark Doggy Day Care center to BVI.

C. An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, logo items, and advertisements in the possession of defendants, their agents, servants and employees, and any person in active concert or participation with them, bearing any of the Central Bark Marks, and all plates, molds, and other means of making the same, if any, be delivered to BVI at defendants' cost;

14

D. An order that defendants file with the Court and to serve upon BVI's counsel within ten (10) days after entry or any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

E. An order that defendants account and pay over to BVI all gains, profits and advantages derived by them as a result of their infringement of the Central Bark Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F. An order that defendants pay to BVI and CBDDC such damages as they have sustained by reason of said trademark infringement and unfair competition; and that, because of the willful nature of said infringement, the Court enter judgment for plaintiffs in an amount equal to three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. 1117;

G. An award of the costs and expenses, including reasonable attorneys' fees and costs, incurred by BVI and CBDDC in connection with this action; and

H. Such other and further relief as the Court deems just and proper.

Dated: October 29, 2013

Respectfully submitted,

**Barkley Ventures, Inc.**
**Central Bark Dog Day Care & Training**
   **Centers, Inc.**


By: /s/  Fredric A. Cohen
       One of its Attorneys

Fredric A. Cohen (#6198606)
Scott C. Walton (#6281534)
CHENG COHEN LLC
311 N. Aberdeen Street, Ste. 400
Chicago, IL 60607
(312) 243-1701
fredric.cohen@chengcohen.com
scott.walton@chengcohen.com